IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PAYCOM PAYROLL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-312-D |
| | ) | |
| BRIAN COLE, | ) | (District Court of Oklahoma County |
| | ) | Oklahoma, Case No. CJ-2015-1297) |
| Defendant. | ) | |

## **ORDER OF REMAND**

Before the Court is Plaintiff's Motion for Remand [Doc. No. 13], filed pursuant to 28 U.S.C. § 1447(c). Defendant has responded in opposition to the Motion, which is fully briefed.

Plaintiff Paycom Payroll, LLC filed suit against Defendant Brian Cole, a former employee, in the District Court of Oklahoma County, Oklahoma, on March 2, 2015. Plaintiff's petition alleges that Defendant's employment as a sales representative for its Detroit, Michigan sales office ended in October 2014, and that in subsequent work for a competitor, Defendant breached certain written agreements "which provided in part that, during Defendant's employment and after his employment with Plaintiff ceased, Defendant would not solicit customers or prospective customers of [Plaintiff] and/or Defendant would not use or disclose [Plaintiff's] confidential information for any purpose other than to fulfill his role as an employee of [Plaintiff]." *See* Petition [Doc. No. 1-1], ¶ 8. Plaintiff asserts that Defendant engaged in conduct prohibited by the agreements during his new employment in

that he has actively solicited Plaintiff's prospective customers and customers, "has actively pursued the same prospective customer contacts and/or customer contacts he was pursuing while employed with Plaintiff," and "has used Plaintiff's confidential information to actively solicit prospective customers and/or customers of [Plaintiff] for the benefit of his new employer." *Id*. ¶¶ 13-16. Plaintiff claims "Defendant's actions have damaged Plaintiff . . . in an amount to be determined at trial, in excess of $10,000." *Id*. ¶¶ 18-19. Plaintiff therefore "seeks a judgment against Defendant for actual damages in excess of $10,000, together with an award of court costs, and such other relief as the Court deems proper." *Id*., p.3 (prayer for relief). Plaintiff does not request injunctive or declaratory relief.

Defendant timely removed the case to federal court on March 26, 2015, on the basis of diversity jurisdiction under 28 U.S.C. § 1332.[1] Upon examination of the Notice of Removal, the Court found insufficient factual allegations to establish diversity of citizenship between the parties and directed Defendant to cure the deficiency. *See* Order of April 7, 2015 [Doc. No. 5]. In compliance with the Court's directions, Defendant filed an Amended Notice of Removal on April 21, 2015. As pertinent to Plaintiff's Motion, which challenges only whether the amount in controversy satisfies § 1332(a), the Notice of Removal and the Amended Notice of Removal contain identical allegations, stating in full as follows:

> The agreements referenced in Plaintiff's Petition, if enforced the way Plaintiff interprets them, would substantially limit Defendant's ability to perform his

---

[1] Following removal, Defendant moved to dismiss the action due to improper venue or to transfer venue to a federal forum in Michigan. By agreement of the parties, further briefing of that motion has been stayed until Plaintiff's Motion is decided.

2

> job as a sales representative in the payroll service industry. Specifically, Defendant could be prohibited from contacting any prospective customers in the payroll services industry for a period of up to two years from October 6, 2014. (Petition ¶¶ 5, 10.) Defendant earns a base salary of $60,000 per year, and in addition, receives allowances and commission totaling in excess of $100,000 per year. As a result, Plaintiff's action jeopardizes Defendant's livelihood through October 6, 2016. As such, the amount in controversy, as that term is defined under the law, exceeds the minimum $75,000 necessary to meet the amount in controversy requirement. However, Defendant denies that Plaintiff is entitled to any money from Defendant.

*See* Notice of Removal [Doc. No. 1], ¶3.c.; Am. Notice of Removal [Doc. No. 10], ¶ 3.c.

By its Motion, Plaintiff challenges the sufficiency of these allegations to show that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," as required by 28 U.S.C. § 1332(a). Plaintiff acknowledges a recent Supreme Court decision, *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014), holding that the general "notice pleading" standard of Fed. R. Civ. P. 8(a) governs a defendant's notice of removal. "As specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegations." *Id.* at 554.

Plaintiff asserts that Defendant has failed to provide any plausible allegation regarding the amount in controversy because he addresses only the monetary effect on him that enforcement of the confidentiality and non-solicitation agreements may have. He does not make any allegations regarding the amount of Plaintiff's damages on its breach of contract claim. Plaintiff states that the agreements do not contain a non-competition provision and

3

that Plaintiff does not seek by its petition to enjoin Defendant from performing his job. Plaintiff contends "Defendant's wages will not serve as the basis for damages, but instead, the basis will be the amount of damage to [Plaintiff], which has yet to be determined." *See* Pl.'s Mot. Remand [Doc. No. 13], p.5 (ECF numbering) (footnote omitted). Plaintiff argues that the amount of its damages "will be measured by the harm done to [Plaintiff] through loss of customers and/or prospective customers or disclosure of confidential and/or protected information by Defendant's conduct, not by the amount of annual compensation Defendant may or may not earn in his current position." *Id*. pp.5-6. In the alternative, if the Court finds that Defendant has plausibly alleged damages in excess of the jurisdictional amount, Plaintiff challenges the allegation and "requests that the Court require Defendant to present evidence under 28 U.S.C. § 1446(c)(2)(B)." *Id*. p.7.

In response to Plaintiff's Motion, Defendant states that the restrictions imposed by the written agreements, "if enforceable, have a substantial impact on [his] livelihood." *See* Def.'s Mem. Opp'n Pl.'s Mot. [Doc. No. 22], p.2. Defendant contends "[t]he Agreements limit [his] ability to contact a significant number of potential customers, interfere with his ability to earn greater commission, and suppress his ability to reach significant sales goals." *Id*. pp.2-3. Defendant submits a sworn declaration to support this assertion, and he provides past and projected sales numbers to demonstrate the potential damage to his livelihood that he believes enforcement of the non-solicitation and confidentiality agreements might cause. Defendant argues that these facts provide both a plausible allegation and sufficient proof that

more than $75,000 is placed at issue by Plaintiff's pleading. He contends the amount in controversy should be "measured by the value of the object of the litigation" and the amount in controversy should be determined by the "either viewpoint rule." *See id*., pp.6-7 (citing *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006)). Finally, Defendant contends Plaintiff's lack of information regarding its damages for the alleged breach of contract is insufficient to show the amount in controversy is "legally certain" to be less than $75,000 and to justify a remand to state court. *See id.*, p.8 (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008)).

In reply, Plaintiff contests Defendant's position that the "either viewpoint rule" may apply in a suit for money damages where no injunctive, declaratory, or equitable relief is sought. Plaintiff contends Defendant lacks legal authority to support this position, noting *Lovell* actually states: "'**In cases seeking declaratory and injunctive relief**, the amount in controversy is measured by the value of the object of the litigation.'" *See* Pl.'s Reply Br., p.2 (quoting *Lovell*, 466 F.3d at 897) (emphasis added by Plaintiff) (internal quotation omitted). Plaintiff points out that *Lovell* also states: "'The Tenth Circuit has followed what has commonly been referred to as the "either viewpoint rule" which considers either the value to the plaintiff or the cost to defendant **of injunctive and declaratory relief as the measure of the amount in controversy** for purposes of meeting the jurisdictional minimum." *Id*. (quoting *Lovell*, 466 F.3d at 897) (emphasis added by Plaintiff). Plaintiff argues that Defendant's allegations regarding the potential impact that the agreements may have on him

5

are "irrelevant" and the pertinent measure of damages, and thus the amount in controversy, "is the harm caused to [Plaintiff] by Defendant's actions." *Id*. p.3 (emphasis omitted). Because Defendant does not attempt to quantify this harm in any of his pleadings or declaration, Plaintiff contends Defendant has not made any plausible allegation that the amount in controversy satisfies the jurisdictional minimum.

As framed by the parties' arguments, the issue for decision by the Court is whether the amount in controversy in this case is measured by Plaintiff's potential damages on its breach of contract claim (as argued by Plaintiff) or whether it may also be measured by the cost to Defendant if the written agreements are enforced (as argued by Defendant). The parties disagree about the application of the "either viewpoint rule," advocated by Defendant, and specifically, whether it is applicable in a straightforward breach of contract case or only in cases where injunctive or other equitable relief is sought.

"It is well-settled by numerous judicial decisions by the Supreme Court, the courts of appeals, and countless district courts . . . that the amount in controversy for jurisdiction purposes is measured by the direct pecuniary value of the right that the plaintiff seeks to enforce or protect or the value of the object that is the subject matter of the suit." *See* 14AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3702.5 (4th ed. 2011) (footnote omitted, which provides "copious illustrative citations" including *Lovell v. State Farm Mut. Auto. Ins. Co*., 466 F.3d 893 (10th Cir. 2006)). "A very important corollary to the measurement principle is that whatever the collateral effects a

decree or judgment might have by virtue of stare decisis, collateral estoppel, or any other impact on the rights or interests of third parties, those consequences cannot be taken into account in calculating the amount in controversy." *Id*. But "often it is difficult to determine what is a direct effect of litigation and what is collateral or indirect or speculative." *Id*.

> In most cases, what the plaintiff seeks to recover is equivalent to what the defendant seeks to preserve. For example, if the plaintiff in good faith claims $85,000 damages in an action for a breach of contract, the defendant will lose precisely the amount the plaintiff is awarded.

*Id*. Stated another way, "[i]n the majority of cases, the particular relief sought by the plaintiff – typically compensatory damages – will be exactly the same as the liability imposed on the defendant if the action is successful." *Id*. § 3703. It is in cases like "suits for an injunction, or to abate a nuisance, or for other forms of specific relief, that the benefit of the action to the plaintiff will have a different value than the burden imposed on the defendant should relief be granted," and the viewpoint from which the amount in controversy is measured becomes an issue. *Id*.

A measurement question may also arise in a breach of contract case where the contract calls for payments of money in installments or creates an obligation continuing over time. Where the plaintiff seeks relief up to the date his complaint was filed, the amount alleged to be outstanding at the time of filing suit provides the appropriate measure of the amount in controversy. *See Adams v. Reliance Standard Life Ins. Co*., 225 F.3d 1179, 1183 (10th Cir. 2000); *White v. N. Am. Accident Ins. Co.*, 316 F.2d 5, 7 (10th Cir. 1963); *see also* Wright, Miller & Cooper, *supra*, § 3710. This is so "[e]ven though the judgment might be accorded

a collateral estoppel effect on certain issues in the event of suits for future payments." *See* Wright, Miller & Cooper, *supra*, § 3710. Where the plaintiff seeks "past and future relief concerning the payment of plaintiff's benefits" or a declaration of the validity of the contract, however, the entire amount of the payments or total value of the contract is the proper measure. *See Adams*, 225 F.3d at 1183-84; Wright, Miller & Cooper, *supra*, § 3710. Thus, the amount in controversy in a breach of contract action involving a contract that creates a continuing obligation may depend on the relief sought by the plaintiff. It may also depend on the substantive law governing the dispute. *See*, *e.g.*, *Henderson v. Nat'l Fid. Life Ins. Co.*, 257 F.2d 917, 919 (10th Cir. 1958) (examining Oklahoma law to determine that future benefits payable under insurance policy were not part of amount in controversy for breach of contract action); *see also* Wright, Miller & Cooper, *supra*, § 3710 ("the amount involved as a direct legal effect of the potential judgment . . . depends on the applicable substantive law").

In this case, Plaintiff seeks to recover damages for alleged breaches of written agreements, one of which is a "Non-Solicitation Agreement" effective for two years.[2] This agreement provides in pertinent part:

> Employee shall not directly or indirectly solicit, induce or attempt to induce
> any prospective customer, who on the date Employee's employment is

---

[2] Although no party provides a copy of the agreements, Defendant purports to quote pertinent provisions of the non-solicitation agreement in his response brief, and Plaintiff does not disagree with the accuracy of these quotes in its reply. Thus, the Court accepts the accuracy of Defendant's quotations. The second contract is described as a confidentiality agreement that prohibits Defendant from utilizing Plaintiff's confidential information, presumably its customer contacts.

> terminated is known by Employee to be engaged in discussions or negotiations to enter into a business relationship with Paycom, to cease discussions or discontinue or reduce the extent of its relationship or prospective business relationship with Paycom.

*See* Def.'s Mem. Opp'n Pl.'s Mot. [Doc. No. 22], p.2. The non-solicitation restriction extends to "customers or prospective customers who are located within a one-hundred mile radius or radii of any Paycom office location in which [Defendant] worked at any time prior to [Defendant's] termination." *Id*. Plaintiff alleges that Defendant has violated the restriction and used confidential information by soliciting its customers and the same prospective customers he was pursuing while employed by Plaintiff, but Plaintiff does not yet know the extent of its loss as a result of Defendant's conduct. Defendant makes no effort to quantify the alleged loss, except to say that he sold approximately $65,000 to $70,000 per year in payroll services during his employment with Plaintiff and enforcement of the agreements will prevent him from selling like amounts, or more, for his new employer over two years. *See id*., pp.6-7. He also estimates "there are a minimum of 8-10 Paycom customers or prospective customers . . . to which I believe I could have a good chance of making yearly sales of $10,000 to $50,000 each." *See* Cole Decl. [Doc. No. 22-1], ¶ 15.

Upon consideration, the Court finds that Defendant improperly relies on the collateral effect that a ruling in Plaintiff's favor may have on his future obligations under the agreements. Focusing on the relief sought by Plaintiff, and thus the object of Plaintiff's suit, the Court is not persuaded that Defendant's loss of future sales or income is the proper measure of the amount in controversy. Plaintiff complains that Defendant has solicited and

pursued on behalf of his new employer the same prospective customers or customer contacts that he pursued while employed by Plaintiff, and Plaintiff seeks to recover damages caused by this conduct. Plaintiff does not seek to enforce Defendant's contractual obligations prospectively, to enjoin Defendant from violating the agreements, or to obtain a declaration that the contracts are enforceable. The direct benefit to Plaintiff if it prevails on the contract claim asserted, and the burden on Defendant if relief is granted, are exactly the same – an award of money damages incurred by Plaintiff as a result of Defendant's breach of the agreements. Because Defendant fails to present any factual allegations from which to estimate Plaintiff's potential damages, Defendant fails to plausibly allege the requisite amount in controversy.

The Court is aware of the Tenth Circuit's discussion in *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008), of the means by which a removing defendant may seek to establish the amount in controversy when factual allegations are contested. The court utilized, as an example, "where a defendant has allegedly breached a contract and the plaintiff seeks damages in an indeterminate amount." *Id*. at 956. The court posited that "a defendant might support jurisdiction by attaching a copy of the contract, valued at more than $75,000, to the notice of removal. Or it might 'introduce evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands." *Id*. (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006)). To the extent this signals a possible measure of the amount in controversy,

it does not assist Defendant in this case. Plaintiff's demand is an amount of damages caused by Defendant's alleged solicitation of its customers and prospective customers. Plaintiff does not seek to enjoin Defendant from future violations of the agreements or seek a declaration that the agreements are enforceable for a two-year term. Defendant's cost to satisfy Plaintiff's demand is to pay any damages caused by his conduct. Defendant makes no effort to quantify this measure of the amount in controversy.

Further, if an impact on Defendant's sales activities were considered, the contractual obligations on which Plaintiff's claim is based do not reach all Detroit businesses that might utilize payroll services, as argued by Defendant. The non-solicitation agreement prevents Defendant from pursuing a "prospective customer, who on the date [Defendant's] employment [was] terminated is known by [Defendant] to be engaged in discussions or negotiations to enter into a business relationship with Paycom." *See supra* p.8. The confidentiality agreement presumably prevents Defendant from pursuing on behalf of his new employer potential customers that he knows from past employment to be Plaintiff's customers. However, the factual allegations and information presented by Defendant do not limit his projected financial loss to these two groups, and so Defendant's allegations provide an insufficient basis to measure a potential loss of sales. More importantly, focusing on the allegations of the Amended Notice of Removal, Defendant states that "Plaintiff's action jeopardizes Defendant's livelihood" because he "could be prohibited from contacting any prospective customers in the payroll services industry." *See* Am. Notice of Removal [Doc.

No. 10], ¶ 3.c.. This allegation is inconsistent with the terms of the contracts on which Plaintiff brings suit, which do not contain a non-competition clause and do not reach all prospective payroll service customers. Thus, even if Defendant's viewpoint is considered, the Court finds that he fails to plausibly allege the requisite amount in controversy.

Finally, Defendant contends that remand is not warranted because Plaintiff has not shown "it is 'legally certain' that less than $75,000 is at stake." *See* Def.'s Mem. Opp'n Pl.'s Mot. [Doc. No. 22], p.8 (quoting *McPhail*, 529 F.3d at 954). However, Plaintiff's burden to establish to a legal certainty that it cannot recover in excess of the jurisdictional amount, and so avoid an exercise of federal jurisdiction, would arise only if Defendant had carried its burden to sufficiently establish the requisite amount in controversy. *See McPhail*, 529 F.3d at 955. Defendant has not done so here.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Remand [Doc. No. 13] is GRANTED. The case is REMANDED to the District Court of Oklahoma County, Oklahoma.

IT IS SO ORDERED this 16th day of July, 2015.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE